# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| SHAUNA MARGUERITE WINTERS,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security,<br><br>Defendant. | Cause No. CV-2:21-33-BMM<br><br><br>**ORDER** |

## INTRODUCTION

Plaintiff Shauna Winters ("Winters") brings this action under 42 U.S.C. § 405(g) seeking judicial review of an unfavorable decision by the Commissioner of Social Security ("Commissioner" or "Defendant"). (Doc 11.) Winters was denied disability benefits on initial review and again upon remand. (Doc. 9 at 229; *Id.* at 23.) Winters now asks the Court to reverse or remand the decision of the Administrative Law Judge. ("ALJ") (Doc. 11.)

## JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Plaintiff resides in Gallatin County, Montana. 29 U.S.C. § 1391(e)(1).

## PROCEDURAL BACKGROUND

Winters filed applications for Title II Disability Insurance benefits and Title XVI Supplemental Security Income on September 19, 2015 and December 19, 2016. (Doc. 9 at 200.) Winters' claims were denied on September 26, 2016, and March 16, 2017, respectively. (*Id.* at 254, 262.) The AJL then issued an unfavorable decision on April 8, 2018, after a hearing. (*Id.* at 229.) Winters requested review from the Appeals Council and review was granted on July 22, 2019. (*Id.* at 250.) The Appeals Council remanded the claim and another hearing was held before a different ALJ on January 17, 2020. (*Id.* at 96.) A later supplemental hearing was held on September 30, 2020 and after that the ALJ issued an unfavorable decision on October 16, 2020. (*Id.* at 55, 23.) The Appeals Council denied review on February 4, 2021. (*Id.* at 10.)

## STANDARD OF REVIEW

The Court conducts a limited review in this matter. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence also has been described as "more than a mere scintilla," but "less than a preponderance." *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).

**BURDEN OF PROOF**

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382(a)(3)(A), (B)).

Social Security Administration regulations provide a five-step sequential evaluation process to determine disability. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The five steps are:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of

>   specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).
>
> 5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante*, 262 F.3d at 954. The claimant bears the burden of proof at steps one through four. *See id.* The Commissioner bears the burden of proof at step five. *See id.*

## BACKGROUND

### I. THE ALJ'S DETERMINATION

Along with the normal 5- step evaluation process the Appeals Council directed the ALJ to consider the statements of Shannon Keenan and Warm Springs Counseling Center which were not presented at the previous hearing, further evaluate Winters's medically determinable impairments, specifically obesity, further consider Winters's maximum residual functional capacity ("RFC"), and to obtain evidence from a vocational expert to clarify the effect of Winters's limitations. (Doc. 11 at 24).

At step one, the ALJ found that Winters met the insured status requirements of the Social Security Act through March 31, 2020. (Doc. 9 at 27.) The ALJ also found that Winters had not engaged in substantial gainful activity since August 7, 2015. (Id.)

At step two, the ALJ found that Winters had the following severe impairments: aneurysm with mild cognitive impairment, anxiety, depression, and attention deficit hyperactivity disorder ("ADHD"). (Doc. 9 at 28.) As ordered by the Appeals Council the ALJ determined that Winters's obesity did not constitute a severe impairment. (*Id.*) The ALJ also found that the alleged obsessive-compulsive disorder ("OCD")/panic disorder were non-medically determinable impairments. (*Id.*)

At step 3, the ALJ found that Winters did not have an impairment or combination of impairments that meets or medically equaled the severity of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1. (*Id.* at 29.)

At step 4, the ALJ found Winters possessed the following RFC:

> She can never climb ladders, ropes, or scaffolds. She can only occasionally be exposed to vibration. She can only occasionally be exposed to pulmonary irritants such as fumes, odors, dust, and gasses. She must avoid all exposure to the use of unguarded moving mechanical parts, such as table saws, band saws, or exposed mechanical gears. She must avoid all exposure to unprotected heights. She can perform no more than simple, routine tasks. She can tolerate no more than occasional changes in the work setting. She cannot do work that involves a production rate pace, such as assembly line work. She is

>limited to work that has no more than minimal contact with the public, i.e., less than occasional. She is limited to work that has only occasional interaction with coworkers and cannot perform tandem or team tasks.

(Doc. 9 at 31.) Based on the RFC the ALJ found that Winters could not perform past relevant work which included, personal care attendant, manager, sales, and sales representative. (*Id.* at 42.)

At step 5 the ALJ, considering Winters's age, education, work experience, and RFC, found there are jobs existing in significant numbers in the national economy that Winters can perform. (*Id.* at 43.) The ALJ also pointed out, however, that transferability of job skills is not material to the determination of disability because "using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." (*Id.*) The ALJ concluded Winters was not disabled. (*Id.* at 44.)

## II. Plaintiff's Position

Winters claims the ALJ erred in two ways. First, Winters contends the ALJ did not support the RFC determination by substantiated facts because the ALJ failed to evaluate every opinion of record. (Doc. 11 at 1.) Winters's second contention is that the ALJ erred by finding that Winters's agoraphobia and panic disorder are non-medically determinable. (*Id.*)

6

### III. Commissioner's Position

The Commissioner asserts the Court should affirm the ALJ's decision because the ALJ reasonably evaluated the conflicting medical evidence and Winters's agoraphobia and panic disorder. (Doc. 12 at 3, 12.) The Commissioner further states the ALJ's decision is free from harmful error and supported by substantial evidence and therefore the Court should affirm. (*Id.* at 13.)

## DISCUSSION

### I. Legal Standard

In assessing a disability claim, an ALJ may rely on the opinions of three types of physicians as follows: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should afford each physician's opinion a certain amount of deference based on that physician's classification. A treating physician's opinion deserves the greatest weight. *Id.* ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2). An examining physician's opinion is entitled, in turn, to a greater weight than a non-examining physician's opinion. *Lester*, 81 F.3d at 830.

An ALJ should afford a treating physician's opinion deference because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). The uncontroverted opinions of the claimant's physicians on the ultimate issue of disability do not bind an ALJ, but an ALJ cannot reject those opinions without presenting clear and convincing reasons for doing so. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). A court can reject a treating physician's controverted opinion on disability only with specific and legitimate reasons supported by substantial evidence in the record. "In sum, reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988) (internal citations omitted).

An ALJ may discredit a treating physician's opinions that are conclusory, brief, or unsupported by the record as a whole or objective medical findings. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2001). An ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating their interpretation thereof, and making findings. *Magellanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1980).

Nurse practitioners are considered "other sources" under applicable Social Security regulations. 20 C.F.R. §§ 404.1502, 416.902; Social Security Ruling (SSR) 06-03p, available at 2006 WL 2329939 (rescinded effective March 27, 2017). The ALJ may assign less weight to the opinions of other sources than to opinions from "acceptable medical sources," such as physicians. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). Evidence from other sources may be discounted by providing reasons germane to each source. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## II.     RFC Determination.

Winters contends that the RFC determination made by the ALJ was unsubstantiated because the ALJ failed to evaluate every opinion of record. (Doc. 11 at 15.) Winters argues the ALJ made the RFC determination before weighing all the opinion evidence, which creates a legal error. (*Id.* at 19.) Winters also alleges the ALJ gave only limited weight to the opinions of Licensed Clinical Social Worker Tricia Harsch ("LCSW Harsch"), Medical Expert and Psychologist Mary Buban, and Dr. Michael Emery and gives limited or no reasons for doing so. Winters contends by giving limited weight to these opinions, the ALJ failed to back up their RFC determination with substantial evidence. (*Id.*)

9

### a. An RFC determination was not made before all the evidence was weighed.

The 5-step evaluation process for determining if a disability is present lays out that all medical evidence should be weighed before an RFC determination. *Bustamante*, 262 F.3d at 954. Winters argues the ALJ did the opposite. Winters claims that the ALJ made their RFC determination and then weighed the medical evidence of LCSW Harsch and Dr. Buban based upon that determination. (Doc. 11 at 19; Doc. 13 at 1.) Winters cites several cases to show that this error warrants remand including *Wilson v. Colvin*, which states, "Opinion evidence is to be considered in determining a claimant's RFC and whether he is disabled; the claimant's RFC and disability status are not to be used to determine the weight given medical opinions." No. 7:15-CV-256-FL, 2017 WL 280889, at *5 (E.D.N.C. Jan. 4, 2017)

Winters alleges that the ALJ improperly made his RFC determination and then used it to weigh the medical evidence of LCSW Harsch. (Doc. 13 at 2.) Winters claims the ALJ erred by rejecting "the opinion of LCSW Harsch by stating the evidence supported only moderate functional limitations." (*Id.*) According to Winters this evidence shows the ALJ used his RFC determination to give less weight to LCSW Harsch's opinion.

10

The ALJ, in weighing LCSW Harsch's opinion does not specifically point to the RFC determination, but rather to the overall medical evidence. (Doc. 9 at 38.) Consistency with the medical record as a whole is a valid factor for weighing an opinion. CFR § 404.1520c (c)(2). The ALJ did not use a prematurely determined RFC to weigh the opinion of LCSW Harsch, and, therefore, did not err in this case.

Winters further contends that the ALJ used a pre-determined RFC to weigh the opinion of Dr. Buban. (Doc. 13 at 2.) Winters supports this claim by stating that the ALJ "discounted the opinion of medical expert Dr. Buban by stating that it conflicted with his Step 2 findings, and his RFC determination for simple routine tasks." (*Id.*)

The ALJ's decision does not support Winters's assertion. The ALJ mostly weighs Dr. Buban's opinion through consistency with the overall medical record. (Doc. 9 at 40.) Near the end of the ALJ's explanation of Dr. Buban's opinion the ALJ does talk about his RFC determination. Winters mischaracterizes the ALJ's statement about the RFC by saying the ALJ used the RFC determination to give less weight to Dr. Buban's opinion. (Doc. 13 at 2.) The ALJ does not use the RFC to discount Dr. Buban's opinion, but instead explains how he agrees with Dr. Buban on one point and has included limitations in the RFC to address that point. (Doc. 9 at 40.)

The ALJ did not use a prematurely determined RFC to weigh opinion

evidence and therefore did not err.

### b. The ALJ properly assessed the opinion of LCSW Tricia Harsch.

Winters begins by pointing out that the ALJ mistakenly stated LCSW Harsch "was not a 'recognized medical source'" when the correct term for LCWS Harsch was a non-acceptable medical source. (Doc. 11 at 16-17.) LCWS Harsch's opinion must be weighed by the factors of CFR § 404.1520c. The ALJ admits this mistake but contends it does not mean the decision to afford Harsch's opinion less weight was unsubstantiated. (Doc. 12 at 8.) This mistake may have led the ALJ to afford LCSW Harsch's opinion less weight and leans in favor of Winters's position, but does not by itself mean the ALJ's decision was unsubstantiated.

Winters then argues that the ALJ's decision for giving LCSW Harsch's opinion less weight was not sufficiently germane because the ALJ did not back up their reasoning with sufficient evidence. (Doc. 11 at 17-18.) LCSW Harsch's opinion claimed that Winters had multiple areas of marked limitation and one area of extreme limitation. (Doc. 9 at 38.)

The ALJ, in evaluating LCSW Harsch's opinion, used the factors of supportability and consistency which are the two most important factors to be considered when weighing an opinion. CFR § 404.1520c (b)(2); (c)(1)(2). The ALJ explained that LCSW Harsch's opinion was unsupported by the medical evidence.

12

(Doc. 9 at 38.) The ALJ further explained that LCSW Harsch's opinion was inconsistent with the overall medical record as well as Harsch's own previous treatment records of Winters. (*Id.*) Even when considering Winters's "brain trauma history" the ALJ found that LCSW Harsch's opinion overstated Winters's limitations. (*Id.*) The ALJ's reasoning for assigning less weight to LCSW Harsch's opinion was based on the factors of CFR § 404.1520c and the ALJ used substantial evidence to support his reasoning. The ALJ's assessment of LCSW Harsch's opinion is not based on legal error and was proper.

### c. The ALJ properly assessed the opinion of Dr. Mary Buban

Winters argues the ALJ improperly assigned less weight to the opinion of Dr. Buban. (Doc. 11 at 25; 26.) The ALJ assigned limited weight to Dr. Buban's opinion that Winters had several areas of marked limitations because it was inconsistent with the overall medical record. (Doc. 9 at 40.) Dr. Buban claimed that Winters had marked limitations in carrying out complex instructions and making judgments on complex work-related decisions as well as marked difficulty interacting with the public. (*Id.*)

The ALJ agreed with Dr. Buban that Winters has difficulty receiving complex instructions and making complex decisions and properly implemented limitations in the RFC to address that difficulty. (Doc. 9 at 40.) As for Dr. Buban's claim that

Winters has marked difficulty interacting with the public, the ALJ found that the overall medical record indicates that Winters has only moderate limitations. (*Id.*) The ALJ further supported that finding by stating Winters regularly interacts with the public by attending doctors' visits and going to the gym. (*Id.*) The ALJ crafted the RFC determination with Dr. Buban's, but offered substantial evidence to give parts of her opinion less weight. (*Id.*) The ALJ properly assessed Dr. Buban's opinion.

### d. The ALJ properly assessed the opinion of Dr. Michael Emery

Winters argues that the ALJ erred by giving Dr. Emery's opinion less weight. (Doc. 11 at 20.) Dr. Emery diagnosed Winters with the following issues: "cognitive dysfunction due to aneurysm, anxiety disorder with panic, agoraphobia, obsessive compulsive disorder, depression, and history of childhood sexual trauma. (Doc. 9 at 1154.) Dr. Emery noted multiple areas of marked limitations in Winters. (*Id.*) The ALJ gave limited weight to Dr. Emery's opinion based on the following three factors: (1) the opinion was inconsistent with the overall medical record; (2) Dr. Emery's opinion was based on a one-time examination and he was not aware of the overall medical record; and (3) Dr. Emery did not know about Winters's validity concerns on several mental examinations. (*Id.* at 39.)

The ALJ gave less weight to Dr. Emery's opinion because it was inconsistent with the medical record. (Doc. 9 at 39.) The more consistent a medical opinion(s)

14

or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be. CFR 404.1520c (c)(2) The ALJ disputed Dr. Emery's findings of marked limitations because the overall medical evidence supports only a finding of moderate limitations. (*Id.* at 38.) The ALJ more specifically pointed to a 2018 treatment record from Winters's primary care physician which showed only moderate limitations. (*Id.*)

The ALJ next discussed how Dr. Emery's opinion was based on a one-time visit and how Dr. Emery did not consult the overall medical record. Supportability and length of treatment relationship are both valid factors for an ALJ to consider when weighing a medical opinion. CFR 404.1520c (c)(1); (c)(3)(i). Specifically, Dr. Emery acknowledged he did not review Winters neuropsychological examination reports. (Doc. 9 at 1151.)

The ALJ determined that medical opinions with longer treatment times and based on a full review of the record deserved more weight than Dr. Emery's opinion. (*Id.* at 39.) The ALJ notes further that those opinions show evidence only for moderate limitations. (*Id.*) The ALJ specifically references a 2018 treatment record by Winters's primary care physician that contrasted greatly with Dr. Emery's evaluation. (*Id.*) The ALJ did not err in giving Dr. Emery's opinion less weight due to the unsupported and one-time nature of his opinion.

15

Finally, the ALJ alleges that Dr. Emery did not know about the validity concerns of several mental examinations that Winters underwent. (Doc. 9 at 39.) This issue is relevant because the ALJ claims that Dr. Emery based his opinion on Winters's self-report of her condition. (*Id.*) The validity concerns seem to be minimal. During a neuropsychological exam the examining doctor noted there were some validity concerns as to the results of the test. (*Id.* at 920.) It was noted on the same test, however, that the scores "are not indicative of any significant lack of effort" (*Id.* at 924.) It was also later noted that "feigning (by Winters) does not make a lot of sense." (*Id.* at 975.) According to this report the validity concerns seem to be minimal. The ALJ's concern about the fact that Dr. Emery's opinion was based wholly on Winters self-report is unfounded.

Despite the validity concerns being unfounded the ALJ still found other valid reasons to give less weight to Dr. Emery's opinion and the ALJ supported those reasons with substantial evidence. The ALJ did not commit an error and properly assessed Dr. Emery's opinion.

### III. Determination of agoraphobia and panic disorder being non-medically determinable.

Winters argues the ALJ erred by finding Dr. Emery's diagnosis of agoraphobia and panic disorder non-medically determinable. (Doc. 11 at 26.) The ALJ determined that because no other medical opinion diagnosed Winters with

16

agoraphobia or panic disorder that those ailments were not medically determinable. (Doc. 9 at 29.)

An impairment "must be established by objective medical evidence from an acceptable medical source." The ALJ will not use a claimant's own statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment. CFR §416.921. Winters is correct in arguing that Dr. Emery is an acceptable medical source, but his diagnosis must be backed up by objective medical evidence. (Doc. 11 at 27.)

The ALJ found that Dr. Emery's diagnosis was not supported by objective medical evidence. The ALJ found that the only reference to agoraphobia or panic disorder came from Dr. Emery's one-time consultive evaluation and there were doubts as to how much objective medical evidence was used during that evaluation. (Doc. 9 at 29; 39.) Due to Dr. Emery's lack of access to Winters's overall medical record the ALJ reasonably believed that Dr. Emery's evaluation and diagnosis was largely dependent on Winters's self-report of her condition. (*Id.* at 39.) The ALJ gave more consideration to opinions which had access to Winters's entire medical record and treated her multiple times. (*Id.*) Those opinions did not have any reference to a diagnosis of agoraphobia or panic disorder. (*Id.* at 29.)

The ALJ reasonably found Dr. Emery's diagnosis of agoraphobia and panic disorder to be non-medically determinable because it was the only diagnosis of these

17

ailments. and because it was not backed up by sufficient objective medical evidence the ALJ reasonably found them to be non-medically determinable. A diagnosis of an impairment is not enough on its own when it is not supported by the overall medical record. Winters has not met her burden to prove there was a medically determinable impairment in this situation.

## CONCLUSION

The ALJ supported his decisions with substantial evidence and did not commit legal error. Winters failed to meet her burden of proving that she is disabled.

Therefore, the undersigned issues the following:

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1. The Commissioner's final decision denying Plaintiff's claims for disability insurance benefits is **AFFIRMED.**

2. The Clerk of Court is directed to enter judgment accordingly.

DATED this 11th day of July, 2022.

_____
Brian Morris, Chief District Judge
United States District Court