IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| SHAUNA MARGUERITE WINTERS, | **Cause No. CV-21-33-BU-BMM** |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

## MOTION TO ALTER JUDGMENT

The Court affirmed the Commissioner of Social Security's ("Commissioner")

final decision denying Shauna Marguerite Winters's ("Winters") claims for

disability insurance benefits. Winters filed a Motion to alter judgment on July 29,

2022, due to the Court's reliance upon 20 C.F.R. § 404.1520c, which applies only to

1

cases filed after March 27, 2017. (*See* Doc. 16 citing 20 C.F.R. §§ 404.1520c, 416.920c). Winters filed her applications in September 2015 and December 2016. The Court agrees that applying the new standard constitutes clear error. *See Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001). Winters's Motion to alter judgment (Doc. 16) is therefore **GRANTED**. The Order issued on July 11, 2022 (Doc. 14) is **VACATED**. The Court submits the following amended order:

## INTRODUCTION

Winters moves this Court to alter or amend the order entered on July 11, 2022, affirming the unfavorable decision by the Commissioner of Social Security ("Commissioner"), pursuant to Fed. R. Civ. P 59(e). (Doc. 14.) Winters was denied disability benefits at the initial review and again upon remand. (Doc. 9 at 22; Doc. 11 at 23.) Winters then asked the Court to reverse or remand the decision of the Administrative Law Judge ("ALJ"). (Doc. 11.) The Court entered a judgment affirming the Commissioner's decision. (Doc. 14.)

## JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Winters resides in Gallatin County, Montana. 29 U.S.C. § 1391(e)(1).

## PROCEDURAL BACKGROUND

Winters filed a Title II application for disability benefits on September 19, 2015, and a Title XVI application for supplemental security income on December 19, 2016. (Doc. 9 at 207; 238). In both applications, Winters alleges disability beginning August 7, 2015. (*Id*. at 209; 238.)

Winters's claims were denied on September 26, 2016, and March 16, 2017, respectively. (*Id*. at 238.) The ALJ identified that Winters had severe impairments, including history of brain trauma resulting from a prior brain aneurysm, as well as anxiety and attention deficit hyperactivity disorder. (*Id*. at 241.) The ALJ further found that Winters's impairments or a combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id*.) The ALJ also found that Winters has only moderate limitations in her ability to interact with others, mental health functioning, and ability to adapt or manage oneself. (*Id*. at 242.)

Winters filed a written request for a hearing on September 20, 2016. (*Id*. at 238.) She appeared and testified at a hearing held on December 13, 2017, in Boise, Idaho. (*Id*. at 238.) The ALJ then issued an unfavorable decision on April 2, 2018. (*Id*. at 235.) The ALJ concluded that Winters was not disabled as defined in the

Social Security Act from August 7, 2015, through the date of the ALJ decision. (*Id.* at 239; 243).

Winters requested review from the Appeals Council, and review was granted on July 22, 2019. (*Id.* at 250.) The Appeals Council remanded the claim, and another hearing was held before a different ALJ on January 17, 2020. (*Id.* at 96.) A later supplemental hearing was held on September 30, 2020, and the ALJ issued an unfavorable decision on October 16, 2020. (*Id.* at 23, 55.) The Appeals Council denied Winters's appeal on February 4, 2021. (*Id.* at 10.)

Winters subsequently filed an action in this Court to reverse or remand the ALJ's decision. (Doc. 11.) The Court entered a judgment affirming the Commissioner's decision. (Doc. 14.) Winters filed a Motion to Alter Judgment on July 29, 2022. (Doc. 16.) Winters asks the Court to grant this Motion, vacate its July 11, 2022 order, and reverse the decision of the Commissioner. (*Id.*)

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Id.* (internal quotation marks omitted). It is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted). "If evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the ALJ. *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998). Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless; that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (as amended) (internal quotation marks omitted).

## BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months"; and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any

other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin*., 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382(a)(3)(A), (B)).

Social Security Administration regulations provide a five-step sequential evaluation process to determine disability. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920 (2022). The five steps are:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante*, 262 F.3d at 954. The claimant bears the burden of proof at steps one through four. *See id.* The Commissioner bears the burden of proof at step five. *See id.*

## BACKGROUND

### A. ALJ's Determination

The ALJ followed the 5-step sequential evaluation process in evaluating Winters's claim. At step one, the ALJ found that Winters has not engaged in substantial gainful activity since August 7, 2015. (Doc. 9 at 35.)

At step two, the ALJ found that Winters has the following severe impairments that significantly limit Winters's ability to perform basic work activities: aneurysm with mild cognitive impairment, anxiety, depression, and attention deficit hyperactivity disorder. (*Id*. at 36.) As ordered by the Appeals Council, the ALJ determined that Winters's obesity does not constitute a severe impairment. (*Id.*) The ALJ also found that the alleged obsessive-compulsive disorder ("OCD")/panic disorder are non-medically determinable impairments. (*Id.*)

At step three, the ALJ found that Winters does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.*) The ALJ found

7

that Winters's mental impairments do not result in at least one extreme or two marked limitations in functions such as understanding, remembering, or applying information, or interacting with others. The ALJ determined that Winters has only a moderate limitation. (*Id.*)

At step four, the ALJ found that Winters possesses residual functional capacity ("RFC") to perform medium work. (*Id.* at 39.) The ALJ determined, however, that Winters is unable to perform any past relevant work, including home attendant; manager in sales; general sales representative; account executive; or a technical support specialist. (*Id.*) The exertional and/or skill level of Winters's past work exceeds her RFC. (*Id.*)

At step 4, the ALJ found Winters possesses the following RFC:

> She can never climb ladders, ropes, or scaffolds. She can only occasionally be exposed to vibration. She can only occasionally be exposed to pulmonary irritants such as fumes, odors, dust, and gasses. She must avoid all exposure to the use of unguarded moving mechanical parts, such as table saws, band saws, or exposed mechanical gears. She must avoid all exposure to unprotected heights. She can perform no more than simple, routine tasks. She can tolerate no more than occasional changes in the work setting. She cannot do work that involves a production rate pace, such as assembly line work. She is limited to work that has no more than minimal contact with the public, i.e., less than occasional. She is limited to work that has only

occasional interaction with coworkers and cannot
perform tandem or team tasks.

(*Id.*) Based on the RFC, the ALJ found that Winters can not perform past relevant
work which included, personal care attendant, manager, sales, and sales
representative. (*Id.* at 50.)

At step five, the ALJ found there are jobs that exist in significant numbers in
the national economy that Winters can perform. (*Id.* at 51.) As such, the ALJ
determined that Winters has not been under a disability, as defined in the Social
Security Act, from August 7, 2015, through the date of the ALJ's decision. (*Id.* at
52.)

## DISCUSSION

### A. The Residual Functional Capacity Determination

Regulations in effect at the time of Winters's application set forth the proper
considerations to be used in evaluating medical opinion evidence to establish a
claimant's RFC. 20 C.F.R. §§ 404.1527, 416.927. With regard to SSA claims filed
before March 27, 2017, an ALJ determines an individual's disability status by
considering, among other evidence, the opinions of "acceptable medical sources."
20 C.F.R. §§ 404.1512, 404.1513, 416.912, 416.913. "Acceptable medical
sources" include licensed physicians, psychologists, optometrists, and podiatrists.

20 C.F.R. §§ 404.1513(a), 416.913(a). Medical sources who are not "acceptable medical sources" include "nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists." 20 C.F.R. §§ 1513(d)(1), 416.913(d)(1); Social Security Ruling (SSR)-06-03p.

The Ninth Circuit, based on regulations in effect at the time Winters filed her claim, distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008)). Each type of medical opinion is accorded a different weight. 20 C.F.R. §§ 404.1527, 416.927. A treating physician's opinion generally is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining reviewing physician. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Garrison*, 759 F.3d at 1012. Medical opinions and conclusions of treating physicians are accorded special weight because these physicians are in a unique position to know claimants as individuals, and because the continuity of

their dealings with claimants enhances their ability to assess the claimants'
problems. *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).

For claims filed before March 27, 2017, the ALJ must accord "controlling
weight" to a treating doctor's opinion where medically-approved, diagnostic
techniques support the opinion and the opinion is not inconsistent with other
substantial evidence. *See* 20 C.F.R. § 404.1527(c)(2); *Revels v. Berryhill*, 874 F.3d
at 654. Opinions of treating physicians may only be rejected under certain
circumstances. *Lester*, 81 F.3d at 830. To discount an uncontradicted opinion of a
treating physician (i.e. there are no other opinions from examining or no-
examining sources), the ALJ must provide "clear and convincing" reasons
supported by substantial evidence in the record. *See Popa v. Berryhill*, 872 F.3d
901, 906 (9th Cir. 2017). The same standard applies to the opinions of non-
treating, examining physicians. *Lester*, 81 F.3d at 830–31.

When a treating or examining doctor's opinion is contradicted by another
doctor's opinion, an ALJ may reject it only by providing "specific and legitimate"
reasons that are supported by substantial evidence. *Garrison*, 759 F.3d at 1012
(quoting *Ryan,* 528 F.3d at 1198). Even when contradicted, a treating or examining
physician's opinion is still owed deference and will often be "entitled to the
greatest weight . . . even if it does not meet the test for controlling weight." *Orn v.*

11

*Astrue,* 495 F.3d 625, 633 (9th Cir. 2007). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick,* 157 F.3d at 725. The ALJ must do more than state conclusions. The ALJ must set forth his own interpretations and explain why the ALJ's findings, rather than the doctors' opinions, are correct. *Garrison*, 759 F.3d at 1012.

Medical sources who are not "acceptable medical sources" such as licensed clinical social workers are defined as "other sources" under the applicable Social Security regulations. 20 C.F.R. § 404.1513(a). The ALJ may use evidence from "other sources," as defined in 20 C.F.R. §§ 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. SSR 06-03p. These "other sources" are not entitled to the same deference as acceptable medical sources. *Molina v. Astrue*, 674 F.3d 1104, 111 (9th Cir. 2012); 20 C.F.R. §§ 1513(d)(1), 416.913(d)(1), although their opinions must be considered by the SSA and ALJs in determining a claimant's ability to perform work-related activities. *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011). The ALJ may discount opinions from "other sources" if the ALJ provides a germane reason for doing so. *Molina*, 674 F.3d at 111.

### i.   The ALJ provided a germane reason for rejecting the opinion of Tricia Harsch, LCSW

Winters argues that the ALJ inappropriately rejected the opinion of Winters's Licensed Clinical Social Worker ("LCSW"), Tricia Harsch. Winters asserts that "[t]he opinion from providers who *did* have a treating relationship, or did review the complete record, were rejected. . . The treating provider, LCSW Tricia Harsch, who's opinion was rejected, submitted the only opinion based on a treating relationship with Plaintiff." (Doc. 16-1 at 7.)

LCSW Harsch may have had a treating relationship with Winters and provided a treating source statement (Doc. 9 at 47), but social workers are not "acceptable medical sources" that an ALJ may consider. 20 C.F.R. §§ 404.1502, 416.902; SSR 06-03p. Under the standard to be applied to SSA claims filed before March 27, 2017, "only licensed physicians and certain other qualified specialists are considered acceptable medical sources." *Molina* , 674 F.3d at 111. A social worker is not considered an acceptable medical source under these regulations. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223–24 (9th Cir. 2010).

Under Ninth Circuit standards, the ALJ need only give "arguably germane reasons" to discount other source statements and need "not clearly link his determination to those reasons." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

13

The ALJ may assign less weight to the opinions of "other sources" than to opinions from "acceptable medical sources," such as physicians. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). Evidence from other sources may be discounted by providing at least one germane reason for doing so. *Molina*, 674 F.3d at 111.

The ALJ gave LCSW Harsch's opinion limited weight and provided germane reasons for doing so. First, the ALJ accorded greater weight to the opinions of the state agency reviewing physicians. (Doc. 9 at 46.) An ALJ's greater reliance upon the opinion of an acceptable medical source provides a valid reason to discount the statement of a non-acceptable medical source. *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015). The ALJ's greater reliance on the acceptable medical opinions of the state agency reviewing physicians, on its own, represented a germane reason to discount LCSW Harsch's opinion. The ALJ did not err in giving LCSW Harsch's opinion limited weight.

### ii.    The ALJ failed to provide specific and legitimate reasons for discounting the opinions of Examining Physician Dr. Emery

Winters argues that the ALJ failed to give proper weight to Winters's examining physician, Dr. Emery, and also failed to offer specific and legitimate reasons supported by substantial evidence for rejecting the testimony of Dr. Emery. (Doc. 16-1 at 4–5.)

Dr. Emery diagnosed Winters with cognitive dysfunction due to aneurysm, anxiety disorder with panic attack, agoraphobia, obsessive compulsive disorder, depression, and history of childhood sexual trauma. (Doc. 47 at 9.) Dr. Emery opined that Winters's short-term memory was markedly impaired, and her long-term memory was variable. (*Id.*) Dr. Emery further noted that Winter's social functioning and general adaptation were noted to be markedly impaired by memory loss, emotional liability, agoraphobia, and panic attacks. (*Id.*)

For claims filed before March 27, 2017, the ALJ must defer to the treating or examining physician's opinion, even if contradicted by another doctor, unless the ALJ makes findings setting forth specific, legitimate reasons for rejecting it that are based on substantial evidence in the record. *See Revels*, 874 F.3d at 654. The ALJ gave limited weight to Dr. Emery's medical opinion. The ALJ suggests that "another January 2018 treatment record from the primary care physician" contradicts Dr. Emery's findings. (Doc. 9 at 47.) The ALJ states that the January 2018 treatment note (*see* Doc. 11 at 24) directly controverts Dr. Emery's diagnosis. The ALJ then adds that "[t]here were other mental examinations in the file with test results that were clouded at least to some degree by validity concerns." (Doc. 9 at 47.) The ALJ concludes, "[i]n any event, the overall medical evidence of record

does not appear to support any areas of marked limitation in [Winters's] overall mental health functioning." (*Id*.)

The ALJ can reject Dr. Emery's opinion, as an examining physician whose findings may have been controverted, however, only if the ALJ provides "specific and legitimate" reasons that are supported by substantial evidence. *Garrison*, 759 F.3d at 1012. An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick,* 157 F.3d at 725. The ALJ afforded Dr. Emery's findings "limited weight" for several reasons, all of which fail to provide the requisite detailed, reasoned, and legitimate rationale for doing so. (*See* Doc. 9 at 47.)

The ALJ discounts Dr. Emery's medical opinion because the opinion was formulated based on Winters's "one time visit" with Dr. Emery. The ALJ explains that Dr. Emery's "examination findings and conclusions were based on a one-time visit . . . and were necessarily based to some extent, perhaps a great extent, on claimant's self-report and presentation on this single occasion." (*Id*.) The fact that Dr. Emery "examined Plaintiff only once is not a specific, legitimate reason for rejecting a doctor's opinion." *Xiong v. Asture*, 2010 WL 3715135, at *5 (E.D. Cal. Sept 15, 2010). An examining physician, by definition, does not have an ongoing

16

relationship with a claimant, yet the regulations and case law require consideration and appropriate weighing of examining physicians' opinions. *Id*. The ALJ suggests that Dr. Emery's medical opinion is inadequate because it is the result of a one-time examination. (Doc. 9 at 47.) The ALJ's reasoning would lead to the conclusion that the opinions of all examining physicians or psychologists should be discarded, contrary to controlling authority. *Xiong*, 2010 WL 3715135, at *5. The ALJ erred by failing to provide a specific and legitimate reason to discount Dr. Emery's opinion.

The ALJ findings also lack detailed reasons based in the record to support the conclusion that a brief January 2018 treatment note controverts Dr. Emery's thorough examination and diagnoses for Winters. The ALJ includes just two citations to the administrative record as offering substantial evidence. These records highlight two instances when Winters visited a treating physician as a follow up ("f/u") visit for "anxiety/constipation/ADHD." (Doc. 9 at 1217.) The note provided by Dr. Bastian includes very brief descriptions that Winters is "well groomed, mood good, affect congruent, seems a little anxious" and "linear though, normal speech." (Doc. 9 at 1219.) The ALJ merely asserts that Dr. Emery's comprehensive evaluation of Winters's mental health and resulting diagnoses are contradicted and undermined by this January 2018 note. The ALJ refers to the

17

single January 2018 treatment note, but provides no factual context regarding Winters's treatment in January 2018.

The ALJ then states that the "overall medical evidence of record" also undermines Dr. Emery's findings. A medical opinion's consistency with the record as a whole represents a valid factor to consider when deciding what weight to give the opinion. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). The ALJ fails, however, to provide specific citations to the record. The ALJ vaguely refers to "other mental examinations in the file" without providing details, a summary of the facts, or citations. The ALJ also doubts the validity of other mental examinations in the record without providing any basis for doing so. Speculative evidence does not constitute substantial evidence. The ALJ's vague and unsupported rationale falls below this threshold.

The ALJ's explanation for discounting Dr. Emery's opinion fails to provide specific and legitimate reasons. Dr. Emery's treatment notes support his opinion, and his opinion comports with the medical record. The ALJ impermissibly presented conclusory statements. The ALJ erred in discounting Dr. Emery's opinions.

**B. Winters's Step Two Impairments**

The ALJ erred in finding that Winters's agoraphobia and panic disorders are non-medically determinable at step two in the Social Security Administration's five-step sequential evaluation process to determine disability. The ALJ erred in discounting certain evidence when evaluating agoraphobia and panic disorder. The ALJ's omission resulted in prejudicial, harmful error.

The regulations instruct the adjudicator to base the assessment on "all of the relevant medical and other evidence" in the record in order to determine an RFC. 20 C.F.R §§ 404.1545(a)(3), 416.945(a)(3). The ALJ must consider all relevant evidence and cannot ignore the evidence that does not support his determination. *See Gallant v. Heckler,* 753 F.2d 1450, 1456 (1984). The ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result." *Id*. A medically determinable physical or mental impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. POMS DI 25205.005. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, as well as the individual's statement of symptoms. *Id*.

19

Agency expert examiner Dr. Emery diagnosed Winters with anxiety disorder with panic, agoraphobia, and obsessive compulsive disorder ("OCD"). (Doc. 9 at 1162.) Dr. Emery notes that Claimant suffered from panic attacks. (*Id*. at 1161.) Dr. Emery's treatment notes support his opinion, which is also consistent with the medical record.

The ALJ disregarded the record, which includes acceptable medical evidence resulting from psychologists' examinations and evaluations, as well as Winters's ongoing and consistent reporting of panic disorder symptoms. The ALJ recognized Winters's impairment when reporting that Winters "has a history of treatment for obsessive compulsive order (OCD)/panic disorder." (*Id*. at 37.) The ALJ takes issue with Dr. Emery's medical opinion because his diagnosis of Winters's condition represents the only diagnosis in the record. (*Id.*)

A psychologist is a qualified medical source for diagnosing mental impairments according to applicable Social Security regulations. Social Security regulations to do not require that the record include multiple diagnoses. Even if this requirement existed, Winters's treating physicians, including Dr. Lyons, Dr. Bastian, Dr. Gage, and Dr. Morelli all reported that Winters suffered symptoms connected to panic disorders (*Id*. at 987, 991–93, 1167, 1172). The ALJ is required to make a finding whether a physical or mental impairment is medically

determinable based on any medically acceptable clinical and laboratory diagnostic techniques in the record. POMS DI 25205.005. Winters's panic and agoraphobic disorders were diagnosed by an acceptable medical source using objective testing.

The ALJ also disregards Winters's self-reported symptoms related to panic disorders. Winters's self-reported symptoms are well-documented in the record. For example, Winters has reported that she is "just afraid to walk out her door." (Doc. 9 at 1071). Winters has anxiety about leaving the house alone (*Id*. at 593, 599–60, 602, 623, 628), and she avoids interactions with others (*Id*. at 604–05).

The ALJ rejects Winters's testimony. In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether there exists "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir.2007)). If the claimant has presented such evidence, and no evidence of malingering exists, then the ALJ must give "specific, clear and convincing reasons" in order to reject the claimant's testimony about the severity of the symptoms. *Id.*

The ALJ may use "ordinary techniques of credibility evaluation" in evaluating the claimant's testimony. *Turner,* 613 F.3d at 1224 n. 3. For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Id.* The ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). And the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter,* 504 F.3d at 1040.

The ALJ rejects Winters's testimony without providing specific, clear and convincing reasons. The ALJ erred in relying on Winters's failure to seek or follow prescribed treatment. (Doc. 9 at 47.) For example, Winters has explained that in some instances she has not refilled medications due to negative side effects, financial reasons, and terminated health insurance. (*Id*. at 1175.) Winters also has reported that in some instances she has not followed prescribed courses of treatment, such as attending mental health counseling. (*Id*. at 1175.) Winters provided adequate reasons that may be attributed to her mental health impairment, rather than to her own preferences. *See Molina*, 674 F.3d at 1114.

The ALJ also refers to inconsistencies between Winters's testimony and Winters's conduct as grounds to reject Winters's testimony. (Doc. 9 at 41.) The

ALJ reports that Winters "usually goes out of her house every day to perform various activities." (*Id.* at 49.) Winters's testimony and the record demonstrates that Winters leaves the house to attend doctor's appointments and counseling sessions. Winters rarely leaves the house otherwise. The ALJ's explanation fails to find support in the record. The ALJ provides no citations to the record.

The ALJ's failure to articulate his reasoning for rejecting evidence favorable to a claimant is inherently harmful in that it inhibits a reviewing court's ability to determine whether substantial evidence supports the RFC assessment. *Wade v. Saul,* 850 F. App'x 568, 570 (9th Cir. 2021); *see Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015). The ALJ found Winters's panic disorder not medically determinable. As a result, the ALJ did not consider any resulting limitations at Step Four. *See* SSR 96-8p ("In assessing [residual functional capacity], the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). The ALJ's error clouded his evaluation of the opinion evidence (Doc. 9 at 47–49) and his evaluation of Plaintiff's subjective reports.

**CONCLUSION**

The Court's Order (Doc. 14) affirming the Commissioner's decision relied on manifest errors of law when the Court relied on the new standard, 20 C.F.R. §

404.1520c, to review the ALJ's evaluation of medical evidence. Upon review pursuant to 42 U.S.C. § 405(g), the Court determines that the ALJ's findings and Commissioner's denial of Social Security benefits are based on legal error and unsupported by substantial evidence. *See Revels*, 874 F.3d at 654. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "[e]ven when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). Substantial evidence found in Winters's record does not reasonably support affirming the Commissioner's decision. The ALJ erred in denying Winters's application for benefits.

## REMEDY

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). When the record is fully developed and further proceedings would serve no useful purpose, the Court may remand for an immediate award of benefits. *Id.* Remand for an award of benefits proves appropriate if there are no outstanding issues that must be resolved before a determination of disability can be made and if it is clear from the record that the ALJ would be required to find the

24

claimant disabled if the ALJ properly had credited a treating or examining physician's opinion. *Id.* (citing *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)).

Remand for an immediate award of benefits proves appropriate here. The record is fully developed, and further proceedings would serve no useful purpose. No outstanding issues exist that must be resolved before a determination of disability can be made. The ALJ developed a record that shows Winters suffered from severe impairments since August 7, 2015. (Doc. 9.) It is clear from the record that the ALJ would have been required to find Plaintiff disabled beginning August 7, 2015, if the ALJ had properly weighed the opinions of Winters's physicians. The Court will reverse the Commissioner's final decision denying Winters's disability insurance benefits beginning August 7, 2015, and remand for an immediate award of benefits.

## ORDER

Accordingly, IT IS HEREBY ORDERED:

1.    Plaintiff's Motion (Doc. 16) is **GRANTED**.

2.    The Court's Order (Doc. 14) is **VACATED**.

3.    The Commissioner's final decision denying Plaintiff's claims for disability insurance benefits is **REVERSED** and **REMANDED** for an immediate award of benefits beginning August 7, 2015.

4.      The Clerk of Court is directed to enter judgment accordingly.

DATED this 13th day of December, 2022.


_____
Brian Morris, Chief District Judge
United States District Court